IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CV-231-D

| | |
|---|---|
| GORDON HAGGOTT BECKHART, JR. ) <br> and STELLA MARIE BECKHART, ) <br> ) <br> Plaintiff-Appellants, ) <br> ) <br> v. ) <br> ) <br> NATIONWIDE TRUSTEE SERVICES, INC., ) <br> Trustee; MORTGAGE ELECTRONIC ) <br> REGISTRATION SYSTEMS, INC., ) <br> Beneficiary under that Deed of Trust ) <br> Recorded at Book 4532, Page 746, New ) <br> Hanover County Register of Deeds; and ) <br> BAC LOANS SERVICING, L.P. f/k/a ) <br> Countrywide Home Loans Servicing, L.P., ) <br> successor-in-interest to Lumina Mortgage ) <br> Company, Inc., ) <br> ) <br> Defendants-Appellees, ) | **ORDER** |

Gordon and Stella Beckhart appeal the bankruptcy court's decision granting summary judgment to defendants-appellees. The dispute focuses on the validity of a deed of trust concerning property in Kure Beach, North Carolina. As explained below, the bankruptcy court properly rejected the Beckhart's arguments attacking the validity of the deed of trust. Thus, the bankruptcy court's judgment is affirmed.

I.

On October 15, 2004, Chastity Nicole Clark conveyed to Gordon H. Beckhart ("Gordon Beckhart") by general warranty deed ("General Warranty Deed") Lot 14 of Ocean Dunes Forest, located at 1338 South Fort Fisher Boulevard, Kure Beach, North Carolina 28449 ("Kure Beach Property"). See [D.E. 2-2] 5–7; Appellants' Br. [D.E. 17] 6; Appellees' Br. [D.E. 20] 5. In addition

to identifying the Kure Beach Property by its physical address, the General Warranty Deed describes the property as

> being all of Lot No [sic] 14, Ocean Dunes Forest, Town of Kure Beach, the same being more fully described as Parcel No. 6 in deed to Edgar D. Baker recorded in Book 1518, Page 1507, New Hanover County Registry. Reference is also made to a plat of record of Ocean Dunes Forest, Phase 1 appearing in Map Book 31, Page 218, New Hanover County Registry.

[D.E. 2-2] 7. On October 18, 2004, the General Warranty Deed was registered in Book 4532, Pages 742 to 745 of the New Hanover County Registry, and was given instrument number 2004055554. Id. 5, 8. The General Warranty Deed names Gordon Beckhart as the only grantee, id. 5, but Gordon Beckhart and his wife, Stella M. Beckhart ("Stella Beckhart"), own the Kure Beach Property as tenants by the entirety. See Hr'g Tr. [D.E. 3] 12.

To pay for the property, Gordon Beckhart obtained a $420,000 adjustable-rate loan from Lumina Mortgage Company, Inc. ("Lumina"), a loan identified by Mortgage Identification Number ("MIN") 1001108-0000027653-3 and Loan Number ("LN") 000002-7653. [D.E. 2-2] 9–12. Gordon Beckhart agreed to repay the loan through regular, periodic payments, the last of which is due on November 1, 2034. Id. 9. Gordon Beckhart and Lumina memorialized the loan agreement in an undated promissory note ("Promissory Note"). See id. 9–12. Both Gordon and Stella Beckhart (collectively, "Beckharts" or "appellants") initialed every space provided in the Promissory Note for "Borrower Initials." See id. 9–11.[1] Only Gordon Beckhart, however, signed the Promissory Note as a "Borrower." See id. 12.

When Gordon Beckhart and Lumina signed the Promissory Note, they envisioned executing a corresponding deed of trust to secure the debt. Indeed, section 11 of the Promissory Note provides

---

[1] The Promissory Note does not define "Borrower." See [D.E. 2-2] 9–12. It does, however, provide that only those who sign the Promissory Note are "fully and personally obligated to keep all of the promises made in [the] Note . . . ." Id. 11.

2

that "[i]n addition to the protections given to [Lumina] under this Note, a . . . Deed of Trust . . . , dated the same date as this Note, protects [Lumina] from possible losses that might result if [Gordon Beckhart does] not keep the promises that [he] make[s] in this Note." Id. 11. Accordingly, on an unspecified date and using a standard Fannie Mae/Freddie Mac form, the Beckharts executed a deed of trust ("Deed of Trust") granting a security interest in "property located in the . . . County of New Hanover . . . which currently has the address of 1338 South Fort Fisher Blvd.[,] Kure Beach, North Carolina 28449 . . . ." Id. 15. Exhibit A to the Deed of Trust provides a legal description of the Kure Beach Property identical to that provided in the General Warranty Deed. Compare id. 7, with id. 27. The Deed of Trust "secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note." Id. 15.

The Deed of Trust defines several terms used in the instrument. "Words used in multiple sections of [the Deed of Trust]"—including "Lender," "Borrower," and "Note"—are defined in the instrument's definitions section. See id. 13–14. "Lender" refers to "Lumina Mortgage Company, Inc." Id. 13. "Borrower is the trustor under this Security Instrument." Id. More specifically, "Borrower" refers to "Gordon H. Beckhart and Stella M. Beckhart, husband and wife tenancy by the entirety." Id. As for "Note," the Deed of Trust's definitions section defines "Note" in two different ways: (1) as "the promissory note signed by Borrower and dated _____";[2] and (2) as the promissory note stating "that Borrower owes Lender four hundred twenty thousand and 00/100 Dollars (U.S. $ 420,000.00) plus interest," to be paid "in regular Periodic Payments and to [be paid] . . . in full not later than November 1, 2034 . . . ." Id. 14. The Deed of Trust also references the

---

[2] The Deed of Trust does not indicate the date on which Lumina and Gordon Beckhart executed the Promissory Note.

3

Promissory Note's MIN 1001108-0000027653-3 and LN 000002-7653. Id. 13.

Unlike words used throughout the Deed of Trust, words used only in a single section "are defined in [one of] Sections 3, 11, 13, 18, 20 and 21" of the instrument. Id. In particular, section 13 defines "co-signer":

> [A]ny Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Id. 21.

As with the Promissory Note, both Gordon and Stella Beckhart initialed every space provided in the Deed of Trust for "Borrower Initials." See id. 13–24. Unlike for the General Warranty Deed and the Promissory Note, however, both Gordon and Stella Beckhart also signed the Deed of Trust. Id. 25. Upon execution, the Deed of Trust was registered and filed in the New Hanover County Registry on the same day as, and sequentially to, the General Warranty Deed for the Kure Beach Property. Compare id. 5 (noting that the General Warranty Deed was registered and filed on October 18, 2004, in Book 4532, Pages 742 to 745, and was assigned instrument number 2004055554), with id. 13 (noting that the Deed of Trust was registered and filed on October 18, 2004, in Book 4532, Pages 746 to 772, and was assigned instrument number 2004055555).

On August 31, 2009, the Beckharts filed for bankruptcy under Chapter 11 of Title 11 of the United States Code. See Am. Compl. [D.E. 2-3] ¶ 1. Nationwide Trustee Services, Inc. ("Nationwide"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and BAC Loans Servicing, L.P. ("BAC") (collectively, "appellees") claim that they have a valid security interest in the Kure Beach Property, granted in the Deed of Trust. See id. ¶ 19; Answer [D.E. 2-4] ¶ 19. The

4

Beckharts disagree and, on November 23, 2009, filed a complaint seeking to invalidate the Deed of Trust. See [D.E. 2-2] 1–4. On December 22, 2009, the Beckharts filed an amended complaint, see Am. Compl., which Nationwide, MERS, and BAC answered on December 24, 2009. See Answer. On December 30, 2009, the Beckharts moved for summary judgment [D.E. 2-5]. On February 8, 2010, the bankruptcy court heard arguments regarding the Beckharts' motion for summary judgment. On April 2, 2010, the bankruptcy court denied the Beckharts' motion. Beckhart v. Nationwide Tr. Servs., Inc., No. 09-263-8-RDD, [D.E. 14] (Bankr. E.D.N.C. Apr. 2, 2010). On April 16, 2010, the Beckharts filed a notice of appeal, id., [D.E. 16] (Bankr. E.D.N.C. Apr. 16, 2010), which was docketed in this court on July 7, 2010. Beckhart v. Nationwide Tr. Servs., Inc., No. 7:10-CV-137-D, [D.E. 1] (E.D.N.C. July 7, 2010). On March 30, 2011, the court dismissed the appeal for lack of jurisdiction. Id., [D.E. 18] (E.D.N.C. Mar. 30, 2011). On May 31, 2011, Nationwide, MERS, and BAC moved the bankruptcy court for summary judgment. Beckhart, No. 09-263-8-RDD, [D.E. 28] (Bankr. E.D.N.C. May 31, 2011). On July 21, 2011, the bankruptcy court granted appellees' motion for summary judgment. See id., [D.E. 33] (Bankr. E.D.N.C. July 21, 2011). On August 4, 2011, the Beckharts filed a notice of appeal. Id., [D.E. 37] (Bankr. E.D.N.C. Aug. 4, 2011). On December 2, 2011, the Beckharts filed their appellate brief, asking the court to overturn the bankruptcy court's grant of summary judgment to Nationwide, MERS, and BAC. On December 29, 2011, Nationwide, MERS, and BAC responded in opposition.

II.

In bankruptcy appeals, a district court reviews a bankruptcy court's legal determinations de novo, and its factual findings for clear error. See Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.), 453 F.3d 225, 231 (4th Cir. 2006). Here, the parties do not dispute the facts. Rather, they

5

dispute whether the bankruptcy court drew the correct legal conclusions from the facts. The dispute focuses on the validity of the Deed of Trust.

A deed of trust "which purports to secure the payment of a debt has no validity if the debt has no existence." Walston v. Twiford, 248 N.C. 691, 693, 105 S.E.2d 62, 64 (1958) (quotation omitted). Accordingly, "North Carolina law requires deeds of trust to specifically identify the debt referenced therein." Beaman v. Head (In re Head Grading Co., Inc.), 353 B.R. 122, 123 (Bankr. E.D.N.C. 2006); see Walston, 248 N.C. at 693, 105 S.E.2d at 64 ("[I]t is necessary for the mortgage to identify the obligation secured."); In re Hall, 708 S.E.2d 174, 177 (N.C. Ct. App. 2011). Based on this overarching principle, the Beckharts seek to invalidate the Deed of Trust. In support, the Beckharts contend that the Deed of Trust is invalid for three reasons: (1) the Deed of Trust does not reference the date on which the Promissory Note was executed; (2) the Deed of Trust misidentifies the borrower obligated on the Promissory Note; and, (3) the Deed of Trust does not identify the Promissory Note with sufficient specificity. The court examines each argument seriatim.

### A.

Although a deed of trust must specifically identify the underlying debt it purports to secure, see In re Head Grading Co., 353 B.R. at 123; Walston, 248 N.C. at 693, 105 S.E.2d at 64; In re Hall, 708 S.E.2d at 177, the law does not require any particular means of identifying an underlying debt. See, e.g., Oliver v. Smith (In re Williams), No. 09-07968-8-RDD, 2010 WL 1440892, at *1–3 (Bankr. E.D.N.C. Apr. 9, 2010) (unpublished) (validating a deed of trust that did not identify the date of the underlying debt, but that provided "the proper lender information; the correct amount of money lent pursuant to the Note; the same date the last payment is due under the Note; the signature of the same person on both the Note and the Deed of Trust; and the same reference to a minimum interest rate, maximum percentage amount the interest rate can increase at one time, and the

6

maximum deviation that the interest rate can change from the initial interest rate"); Walston, 248 N.C. at 692–93, 105 S.E.2d at 63–64 (validating a deed of trust that identified the underlying promissory note by reference to the note's date, parties, and terms); In re Hall, 708 S.E.2d at 177 (holding that a deed of trust properly identified its underlying debt by date, amount, parties, and subsequent modifications). When assessing whether a deed of trust adequately identifies the underlying debt it purports to secure, the absence of any particular piece of identifying information is not dispositive. Thus, a deed of trust's failure to identify an underlying debt by date, party, term, or any other specific piece of identifying information will not per se invalidate the deed of trust.

The Beckharts assert that the Deed of Trust sets forth its own definition of the underlying debt. That definition, in relevant part, defines the underlying debt as "the promissory note signed by Borrower and dated _____." Appellants' Br. 9. The Beckharts then contend that "[t]he definition of Note in the Deed of Trust clearly requires that a date for the note [sic] be inserted, and the failure to include the date of the . . . Note makes the definition of the Note misleading." Id. According to the Beckharts, because the Deed of Trust's definition of "Note" is misleading, the Deed of Trust does not sufficiently identify the Promissory Note as the underlying debt, and the bankruptcy court erred in concluding otherwise. See id. 8–9.

The Beckharts' fixation on the missing date is misplaced. North Carolina law does not require a deed of trust to use any particular piece of information to identify the underlying debt. Compare In re Williams, 2010 WL 1440892, at *1–3 (validating a deed of trust that did not identify the date of the underlying debt, but that identified the parties to and terms of the underlying debt), with Walston, 248 N.C. at 692–93, 105 S.E.2d at 63–64 (validating a deed of trust that identified the underlying note by reference to the note's date, parties, and terms), and In re Hall, 708 S.E.2d at 177 (holding that a deed of trust properly identified its underlying debt by date, amount, parties, and

7

subsequent modifications). Thus, merely because the Deed of Trust fails to reference the date of the Promissory Note does not per se invalidate the Deed of Trust. See In re Williams, 2010 WL 1440892, at *1–3; cf. In re Foreclosure of Deed of Trust of Enderle, 110 N.C. App. 773, 774–75, 431 S.E.2d 549, 550 (1993) (invalidating a deed of trust not because it failed to reference the date of the promissory note it purported to secure, but because the identifying information the deed of trust did contain conflicted with the allegedly underlying promissory note). Rather, the court focuses on whether the identifying information contained in the deed of trust (whatever that information may be) specifically identifies the underlying debt and is consistent with the underlying debt.

The Beckharts correctly observe that the Deed of Trust defines the underlying debt it purports to secure, but the court rejects their argument that the definition is somehow "misleading." Appellants Br. 6. First, the Promissory Note itself is undated. See [D.E. 2-2] 9. This fact explains the Deed of Trust's failure to define the Promissory Note by its date—there is no date to reference. In fact, had the Deed of Trust referenced a specific date for the Promissory Note it purports to secure, the Deed of Trust may have been invalid. See In re Head Grading Co., 353 B.R. at 123–24. Contrary to the Beckharts' argument, the missing date in the Deed of Trust is consistent with, rather than an inadequate or misleading identification of, the Promissory Note, and does not per se invalidate the Deed of Trust. See In re Williams, 2010 WL 1440892, at *1–3; Walston, 248 N.C. at 693, 105 S.E.2d at 64. Moreover, the Deed of Trust's reference (in the definition of "Note" and elsewhere) to the principal amount, payment structure, final payment due date, MIN, and LN of the underlying debt the Deed of Trust purports to secure is entirely consistent with the Promissory Note. Compare [D.E. 2-2] 9–12, with id. 13–14. Thus, the bankruptcy court correctly concluded that the missing date in the Deed of Trust does not per se invalidate the Deed of Trust.

B.

Next, the Beckharts contend that the Deed of Trust identifies both Gordon and Stella Beckhart as the borrowers on the Promissory Note, whereas only Gordon Beckhart signed the Promissory Note as a borrower. Appellants' Br. 9. The Beckharts argue that the Deed of Trust therefore identifies an underlying debt that does not exist, and is invalid. Id. 9–10. Furthermore, the Beckharts contend that section 13 of the Deed of Trust does not cure the misidentification. See id. 10–13. Rather, they assert that "[t]he primary purpose of [section] 13 is to make the obligations of a co-signor [sic] clear, but [section] 13 does not modify the definition of 'Borrower' [provided in the Deed of Trust]. The definition of 'Borrower' is contained only in Paragraph B in the Definitions section on the first page of the Deed of Trust." Id. 13 (emphasis in original). Thus, the Beckharts argue that the bankruptcy court erred in finding that the Deed of Trust properly identified the borrower on the Promissory Note and erred in holding that the Deed of Trust was valid.

Nationwide, MERS, and BAC respond that the Deed of Trust's definitions section and section 13 must be read together to properly define "Borrower." See Appellees' Br. 11–13. Doing so reveals that "Borrower" as defined in the definitions section is an umbrella term comprising a subset of "Borrowers" who signed the Deed of Trust but who are not obligated on the underlying Promissory Note, and a subset of "Borrowers" who signed the Deed of Trust and who are obligated on the Promissory Note. See id. Specifically, the definitions section and section 13, together, identify Gordon Beckhart as the only "Borrower" on the Deed of Trust who is also obligated on the Promissory Note. Id. Accordingly, Nationwide, MERS, and BAC contend that the definition of "Borrower" provided in the Deed of Trust comports with the meaning of the term as used in the Promissory Note, that the Deed of Trust properly identifies Gordon Beckhart as the only borrower on the Promissory Note, that the Deed of Trust is valid, and that the bankruptcy court did not err in

9

so holding. See id.

Under North Carolina law, interpretation of a written and unambiguous contract is a question of law for the court. Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960). When construing contractual terms, a contract's plain language controls. See, e.g., State v. Philip Morris USA Inc., 363 N.C. 623, 631–32, 685 S.E.2d 85, 90–91 (2009); Hodgin v. Brighton, 196 N.C. App. 126, 128–29, 674 S.E.2d 444, 446 (2009); Hemric v. Groce, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005); Martin v. Martin, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457–58 (1975).

Here, when viewed in the light most favorable to the Beckharts, the Promissory Note identifies only Gordon Beckhart as the borrower. See [D.E. 2-2] 12 (providing only Gordon Beckhart's signature as a borrower on the Promissory Note); but see id. 9–11 (showing both Gordon and Stella Beckhart's initials in the spaces provided for "Borrower Initials"). The Deed of Trust, however, defines "Borrower" as "Gordon H. Beckhart and Stella M. Beckhart, husband and wife tenancy by the entirety." Id. 13. The Beckharts contend that the conflicting definitions of borrower invalidate the Deed of Trust: "[t]here is no Note signed by the Borrower, Gordon H. Beckhart and Stella M. Beckhart," and "[t]he Deed of Trust is invalid because [its inconsistent definition of "Borrower"] does not specifically identify the obligation secured." Appellants' Br. 9–10.

The Deed of Trust's definition of "Borrower" is not as significant as the Beckharts believe. Although the Deed of Trust defines "Borrower" to include both Gordon and Stella Beckhart, such a definition is necessary. The standard Fannie Mae/Freddie Mac form used for the Deed of Trust pre-defines "Borrower" as "the trustor under this Security Instrument." [D.E. 2-2] 13. Thus, "Borrower" as defined in the Deed of Trust must include every trustor required for a valid deed of trust.

10

Both Gordon and Stella Beckhart are necessary trustors for a valid deed of trust on the Kure Beach Property. The Beckharts own the Kure Beach Property as tenants by the entirety. See Hr'g Tr. 12; accord [D.E. 2-2] 13. Under North Carolina law, title of property owned in tenancy by the entirety is held by "but one owner, and that is neither the [husband] nor the [wife], but both together." Johnson v. Leavitt, 188 N.C. 682, 685, 125 S.E. 490, 492 (1924). Therefore, a property owned in tenancy by the entirety may be encumbered only with the written joinder of both spouses. See N.C. Gen. Stat § 39-13.6(a); First Nat'l Bank v. Hall, 201 N.C. 787, 789, 161 S.E. 484, 485 (1931). Because Gordon and Stella Beckhart own the Kure Beach Property as tenants by the entirety, both are necessary trustors for a valid, enforceable deed of trust encumbering the property. Cf. Hr'g Tr. 12. Because the standard Fannie Mae/Freddie Mac deed-of-trust form used in this case equates "Borrower" and trustor, the Deed of Trust had to list both Gordon and Stella Beckhart as "Borrowers"—and therefore as trustors—for Lumina to properly perfect its security interest in the Kure Beach Property.

As the Beckharts have highlighted, defining "Borrower" as "the trustor under this Security Instrument," [D.E. 2-2] 13, rather than simply as the individual obligated on the underlying debt, created an inconsistency between the Deed of Trust and the Promissory Note. Specifically, it required the parties completing the Deed of Trust to list both Gordon and Stella Beckhart as "Borrowers," even though Stella Beckhart is not obligated on the Promissory Note. The Deed of Trust, however, accounts for this discrepancy. Although the Deed of Trust's definitions section defines "words used in multiple sections of this document," including "Borrower," it is not the Deed of Trust's only definitional section. As the definitions section disclaims, "other words are defined in sections 3, 11, 13, 18, 20 and 21." Id. For example, section 13 defines a co-signer as "any Borrower who co-signs this Security Instrument but does not execute the Note . . . ." Id. 21. Section

11

13 thus elaborates on the definition of "Borrower," clarifying that "Borrower" is an overarching term encompassing a subset of "Borrowers" who have signed the Deed of Trust and who are obligated on the Promissory Note, and a subset of "Borrowers" who have signed the Deed of Trust but who are not obligated on the Promissory Note. Applied to the facts in this case, both Gordon and Stella Beckhart are trustors of the Kure Beach Property, and are therefore identified as "Borrowers" in the Deed of Trust's definitions section. Pursuant to section 13, Stella Beckhart is placed in the subset of "Borrowers" who are co-signers of the Deed of Trust, but who have not signed and thus are not obligated on the Promissory Note. Gordon Beckhart is left as the only "Borrower" identified in the Deed of Trust who is obligated on the underlying Promissory Note. When all relevant definitional sections are construed together, the definition of "Borrower" provided in the Deed of Trust comports with the meaning of the term as used in the Promissory Note. Accordingly, the Deed of Trust properly identifies Gordon Beckhart as the only party obligated on the Promissory Note, and the difference between the definition of "Borrower" provided in the Deed of Trust and the meaning of that term as used in the Promissory Note does not invalidate the Deed of Trust.

Opposing this conclusion, the Beckharts rely on Enderle and Putnam v. Ferguson, 130 N.C. App. 95, 502 S.E.2d 386 (1998). These two cases, however, provide no comfort to the Beckharts. In Enderle, Donald and Arlene Tant (collectively, "Tants") obtained a $255,000 loan from Fidelity Bank. Enderle, 110 N.C. App. at 774, 431 S.E.2d at 549. The Tants were the only borrowers listed on the note. The note indicated that it was secured by a "Deed of Trust on Lot 7 1.09 Acres Barton Creek Township Wake Co." Id., 431 S.E.2d at 549 (quotation omitted). On the same day that the Tants signed the note, Donald and Jean Enderle (collectively, "Enderles") executed the deed of trust referenced in the note. The deed of trust stated that the Enderles conveyed in trust the Barton Creek Township property identified in the underlying note, and that the property secured the $255,000 debt

12

the Enderles owed to Fidelity Bank. Id. The deed of trust did not mention the Tants. See id., 431 S.E. 2d at 549. The North Carolina Court of Appeals invalidated the deed of trust. Because "[t]here is no reference in the deed of trust to indicate that it is security for a debt of the Tants[,] . . . because . . . the Enderles are not indebted to the Bank, and because the alleged Enderle debt is the one referenced in the deed of trust, . . . the deed of trust did not properly identify the obligation secured, [and] is invalid." Id. at 775, 431 S.E.2d at 550 (quotation omitted).

Similarly, in Putnam, Mildred Putnam ("Putnam") deeded land to Greg Ferguson. 130 N.C. App. at 95, 502 S.E.2d at 387. Contemporaneously, Greg Ferguson executed a deed of trust stating that he owed Putnam $30,000, "as evidenced by a Promissory Note [dated May 3, 1990] . . . ." Id., 502 S.E.2d at 387 (quotation omitted). On May 3, 1990, Leslie and Marilyn, but not Greg, Ferguson executed a promissory note to Putnam for $30,000, which was "secured by a Deed of Trust . . . ." Id. at 95–96, 502 S.E.2d at 387. Nowhere did the promissory note indicate that Greg Ferguson had executed the deed of trust. See id., 502 S.E.2d at 387. The North Carolina Court of Appeals invalidated the deed of trust, holding that the deed of trust did not properly identify the underlying debt because "the deed of trust identifies Greg Ferguson as the debtor, while the promissory note is from Leslie and Marilyn Ferguson." Id. at 98, 502 S.E.2d at 388.

In both Enderle and Putnam, the North Carolina Court of Appeals relied on the fact that the deed of trust and the underlying promissory note identified altogether different debtors. Here, in contrast, both the Deed of Trust and the Promissory Note identify Gordon Beckhart as the borrower. [D.E. 2-2] 12–13. The Deed of Trust also identifies Stella Beckhart as a "Borrower." Id. 13. As explained, however, section 13 of the Deed of Trust clarifies the definition of "Borrower" provided earlier in the instrument, designates Stella Beckhart as a co-signer of the Deed of Trust who is not obligated on the Promissory Note, and leaves Gordon Beckhart as the only "Borrower" identified

13

in the Deed of Trust who is obligated on the Promissory Note. See id. 13, 21. Thus, unlike in Enderle or Putnam, the Deed of Trust properly identifies Gordon Beckhart as the borrower on the Promissory Note, and the bankruptcy court properly rejected this argument.

## C.

A deed of trust must identify the underlying debt it purports to secure. Any identifying information will suffice, but the identifying information must be consistent with the underlying debt. See Walston, 248 N.C. at 693, 105 S.E.2d at 64 ("The . . . deed of trust here in question adequately describes the obligation of the grantors. There is no intimation or suggestion that the note recited in the deed of trust was in any way at variance with the terms of the obligation as set out in the deed of trust."); accord In re Williams, 2010 WL 1440892, at *1–3 (validating a deed of trust that, when identifying the underlying debt, provided "the proper lender information; the correct amount of money lent pursuant to the Note; the same date the last payment is due under the Note; the signature of the same person on both the Note and the Deed of Trust; and the same reference to a minimum interest rate, maximum percentage amount the interest rate can increase at one time, and the maximum deviation that the interest rate can change from the initial interest rate"); Easthaven Marina Grp., LLC v. B&M Holdings, LLC, No. 08-05453-8-JRL, 2009 WL 703383, at *1–2 (Bankr. E.D.N.C. Mar. 13, 2009) (unpublished) (holding that a deed of trust misidentified its underlying debt when the deed of trust stated that "SHM Marina Group, LLC" incurred the underlying debt on March 1, 2007, but when in fact "Scotts Hill Marina Group, LLC" incurred the underlying debt on March 2, 2007 (quotation omitted)); In re Head Grading Co., 353 B.R. at 123–24 (invalidating a deed of trust that identified the underlying debt by its date, principal amount, and parties when the date of the underlying debt provided in the deed of trust conflicted with the actual date of the underlying debt); In re Hall, 708 S.E.2d at 177 (holding that a deed of trust properly identified its underlying

debt by date, amount, parties, and modifications when the identifying information was consistent between the deed of trust and the underlying debt); Enderle, 110 N.C. App. at 774–75, 431 S.E.2d at 549–50 (invalidating a deed of trust that identified the underlying debt by the parties, property, and principal amount involved when the debtors listed in the deed of trust did not include either of the debtors obligated on the underlying note). The identifying information also must be sufficiently unique to reference only the debt purportedly secured by the deed of trust. See Allman v. Wappler (In re Cansorb Indus. Corp.), No. 07-50041, 2009 WL 4062220, at *6 (Bankr. M.D.N.C. Nov. 20, 2009) (unpublished); In re Head Grading Co., 353 B.R. at 123; Walston, 248 N.C. at 693, 105 S.E.2d at 64; In re Hall, 708 S.E.2d at 177.

The Beckharts acknowledge that the Deed of Trust and Promissory Note contain numerous consistencies, including the name of the lender, the principal amount of the underlying debt, the date by which the debt must be repaid in full, and the Promissory Note's MIN and LN. Appellants' Br. 8. But the Beckharts contend that "[m]ere consistent terms . . . are not sufficient to properly identify the underlying obligation." Id. 9. Instead, the Beckharts highlight that the Deed of Trust does not identify the Promissory Note by date, and contend that the Deed of Trust misidentifies the borrower on the Promissory Note. Id. 9–14. Based on these two facts, the Beckharts argue that despite the other consistencies, the Deed of Trust insufficiently identifies the Promissory Note, and is therefore invalid. Id.

The court rejects the Beckharts' argument. The Beckharts' assertion that "[m]ere consistent terms . . . are not sufficient to properly identify the underlying obligation," Appellants' Br. 9, contravenes applicable law. A deed of trust adequately identifies an underlying debt when "[t]here is no intimation or suggestion that the note recited in the deed of trust [is] in any way at variance with the terms of the obligation as set out in the deed of trust." Walston, 248 N.C. at 693, 105

S.E.2d at 64; see In re Williams, 2010 WL 1440892, at *1–3; In re Hall, 708 S.E.2d at 177. Here, there is no such intimation or suggestion. Section 11 of the Promissory Note indicates that Lumina and Gordon Beckhart envisioned a deed of trust that would secure the debt memorialized in the Promissory Note. See [D.E. 2-2] 11 ("In addition to the protections given to the Note Holder under this Note, a . . . Deed of Trust . . . dated the same date as this Note, protects the Note Holder from possible losses that might result if [Gordon Beckhart does] not keep the promises that [he] make[s] in this Note."). The Deed of Trust then directly identifies, in myriad ways, the underlying Promissory Note that it secures. The Deed of Trust identifies the Promissory Note by the parties involved: Lumina as the lender and Gordon Beckhart as the borrower. See id. 13. The Deed of Trust also identifies the Promissory Note by its terms, stating "that Borrower owes Lender four hundred twenty thousand and 00/100 Dollars (U.S. $ 420,000.00) plus interest," to be paid "in regular Periodic Payments and to [be paid] . . . in full not later than November 1, 2034 . . . ." See id. 14. Finally, the Deed of Trust references the Promissory Note's MIN 1001108-0000027653-3 and LN 000002-7653. Id. 13. This direct identifying information is entirely consistent with the Promissory Note. See id. 9–11. Even the Deed of Trust's failure to reference a specific date for the underlying debt is consistent with the undated Promissory Note. See id. 9. Furthermore, the direct references contained in the Deed of Trust identify only one possible underlying debt—the Promissory Note that Gordon Beckhart executed with Lumina, memorializing a $420,000 adjustable-rate loan Lumina extended to Gordon Beckhart to purchase the Kure Beach Property. The direct identifying information in the Deed of Trust, alone, defeats the Beckharts' argument that the Deed of Trust insufficiently identifies the Promissory Note.

But there is more. In addition to directly identifying the Promissory Note, the Deed of Trust provides other information that strongly suggests that the Deed of Trust secures the Promissory Note.

First, the lender's address listed in the Deed of Trust matches the address to which Gordon Beckhart must send his monthly payments under the Promissory Note. Compare [D.E. 2-2] 9, with id. 13. Second, the Promissory Note and the Deed of Trust use identical physical addresses to identify the Kure Beach Property to which they pertain. Compare id. 9, with id. 15. Moreover, the Deed of Trust and the General Warranty Deed conveying the land for the purchase of which Gordon Beckhart executed the Promissory Note use identical legal descriptions to identify the Kure Beach Property. Compare id. 7, with id. 27. Finally, on October 18, 2004, the General Warranty Deed and the Deed of Trust were registered sequentially in the New Hanover County Registry. Compare id. 5, with id. 13. Although these facts do not directly reference the Promissory Note, they support the conclusion that Lumina and Gordon Beckhart intended for the Deed of Trust to secure the Promissory Note and thereby supplement the direct identifying information contained in the Deed of Trust. Based on both direct and indirect identifying information, the Deed of Trust sufficiently identifies the Promissory Note, and is therefore valid. See In re Williams, 2010 WL 1440892, at *1–3; Walston, 248 N.C. at 693, 105 S.E.2d at 64; In re Hall, 708 S.E.2d at 177.

III.

Accordingly, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED. This 20 day of August 2012.

JAMES C. DEVER III
Chief United States District Judge